FRANK M. ARMSTRONG, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

Where but one and the same offense is charged in several counts of an indictment, the denial of a motion to compel the People to elect on which count they will rely is not error.

Upon the trial of an indictment for seduction, under the act punishing seduction as a crime (chap. 111, Laws of 1848), the prosecutrix was permitted to answer, under objection and exception, when her parents died. *Held,* no error.

The prosecutrix was permitted to testify, under objection and exception, to a conversation, and to the circumstances attending it, had with the accused some two months after the commission of the alleged offence in relation thereto. *Held,* no error.

The prosecutrix was permitted to answer, under objection and exception, the following question : "Did you believe him, when he had connection with you, that he would marry you"? *Held,* no error, as an answer

would tend to prove or disprove one of the important elements of the crime, *i. e.*, that the consent of the prosecutrix was given under and by reason of a promise of marriage; also *held*, that the testimony of the prosecutrix that she was in the family way at the time of the trial, some seven months after the commission of the alleged offence, was competent.

Under the provision of said act declaring that a conviction shall not be had upon the testimony of the female seduced, unsupported by other evidence, supporting evidence is only required as to the promise of marriage, and the carnal connection.

As to the promise of marriage the provision is satisfied by proof of circumstances which usually attend an engagement of marriage; as to the illicit intercourse and the immediate persuasions and the inducements which led the female to consent, evidence of opportunities more or less frequent and continued, and that the relations of the parties were such as indicated that confidence in and affection for the accused, on the part of the female, which rendered it probable that the act may have been done, are sufficient.

The fact that the prosecutrix in her testimony limits the carnal connection to a single act, and specifies the time, does not require that the supporting evidence shall be confined to that particular time; if it covers a period including the specified time it is sufficient to meet the requirements of the statute, although there is no corroborative evidence as to the particular act testified to. (CHURCH, Ch. J., dissenting.)

An attorney employed by the prosecutrix to bring an action against the accused for breach of promise of marriage was asked whether he obtained from her the facts stated in the complaint in such action. This was objected to as calling for a privileged communication. The complaint was not sworn to, nor was it read over to the prosecutrix after it was made. *Held*, that the objection was properly sustained.

The prosecutrix testified to but one act of illicit intercourse, and fixed the time and place; the accused gave evidence tending to show that he was not at the place specified at the time stated. The court after referring in its charge to this testimony for the defence, and after stating that if it satisfied the jury that the accused was not there at the time specified by the prosecutrix, this disposed of her evidence, added: "that no matter when it (the illicit intercourse) did take place, provided it was after the promise of marriage, and the consent on her part was in consequence of the promise." *Held*, no error; that it was not a direction to the jury to inquire whether there was an illicit connection at some other time after the promise of marriage, but was rather a limitation, to the effect, that if the jury should find there was illicit intercourse, they must find it was after a promise and in consequence of it.

The fact that the promise of marriage was made some time prior to the illicit intercourse does not take the case out of the statute.

As to whether, where the promise of marriage is only upon the condition that pregnancy results from the illicit intercourse, the case is brought within the statute, *quære*.

(Argued May 21, 1877; decided June 5, 1877.)

ERROR to the General Term of the Supreme Court in the fourth judicial department, affirming a judgment entered upon a verdict convicting plaintiff in error of the crime of seduction under promise of marriage, under chap. 111, Laws of 1848.

. The indictment contained five counts, charging the same offence. At the close of the evidence, on the part of the prosecution, the prisoner's counsel requested that the prosecution be required to elect on which count they would rely. The motion was denied, and exception duly taken.

The prosecutrix was permitted to testify, under objection and exception, that her father and mother were both dead, and to state the time of their death respectively.

The prosecutrix testified to a promise of marriage made the latter part of May, 1875. The agreement was, in substance, that the parties should get married as soon as he "had something ahead." The alleged illicit intercourse, she testified, took place August 5th, thereafter, at the house of a Dr. Kimball. The witness was asked to go on and state, in her own way, what occurred on the evening of the intercourse. This was objected to, and objection overruled. The evidence in regard thereto, as far as material, is set forth in the opinion. The prosecutrix was asked, and permitted to answer, under objection and exception, this question: "Did you believe, when he had connection with you, that he would marry you?" Her answer was, "Yes, sir." The prosecutrix was allowed to testify, under objection and exception, to a conversation which she alleged occurred in October, after the alleged illicit intercourse, at the house of one Mr. Gaylord. The conversation, as testified to, occurred in the evening. The prisoner called about 10 P. M., after witness had gone to bed. She was called, got up and dressed herself, and went down to receive him. In the conversation, as detailed by her, she told him she was in a family-way. He replied that he was so situated that he could not be married then and that he knew she could send him to State prison.

The trial took place in March, 1876. The prosecutrix was permitted to testify, under objection and exception, that she was in a family way at that time.

The further facts are sufficiently stated in the opinion.

*Wm. S. Farnell*, for the plaintiff in error. The court erred in refusing to require the district attorney to elect on which count of the indictment he would rely. (3 R. S. [5th ed.], 989, § 40; 1 Colby's Cr. L., 481; 2 id., 118–121; *People* v. *Van Steenburg*, 1 Park. Cr., 45; *Klock* v. *People*, 2 id., 685; *Nelson* v. *People*, 23 N. Y., 297; *People* v. *Costello*, 4 Den., 83, 90; 8 C. & P., 697; Roscoe's Cr. Ev., 216.) The court erred in allowing the prosecutrix to testify how old she was when her father died. (*Cook* v. *People*, 2 T. & C., 406.) It was also error to allow her to answer the question, " did you believe him when he had connection with you that he would marry you?" (*Waugh* v. *Fielding*, 48 N. Y., 681; *Jessup* v. *Miller*, 1 Keyes, 331; *Fiedler* v. *Darrin*, 50 N. Y., 443; 43 id., 279; 48 id., 669; 2 id., 519; 29 id., 9.) Evidence as to the pregnancy of the prosecutrix was inadmissible. (*Boyce* v. *People*, 55 N. Y., 646,) It was necessary to support the prosecutrix by other evidence than her own as to the promise of marriage and the intercourse. (*Kenyon* v. *People*, 26 N. Y., 207; 5 Park. Cr., 254; *People* v. *Heine*, 8 N. Y. L. Obs., 135; 55 N. Y., 645; *People* v. *Haynes*, 55 Barb., 450; *State* v. *Crawford*, 34 Iowa, 40; *Comm.* v. *Walton*, 2 Brews., 48, 70; *People* v. *Zeiger*, 6 Park. Cr., 356.) The plaintiff in error having proved that he was elsewhere on the day the prosecutrix swore the connection took place, the court erred in not directing the jury to acquit him. (*People* v. *Schryven*, 42 N. Y., 1; *Reynolds* v. *People*, 41 How., 187, 188.)

*F. Brundage*, district attorney, for the defendants in error. The motion to quash the indictment was properly denied. (*People* v. *Kenyon*, 5 Park. Cr., 254; 26 N. Y., 203; *Crozier* v. *People*, 1 Park. Cr., 453; *Boyce* v. *People*, 55 N. Y., 644;

Opinion of the Court, per FOLGER, J.

*People ex rel. Tweed* v. *Liscomb*, 60 id., 576; *Osgood* v. *People*, 39 id., 449, 451; *Kane* v. *People*, 8 Wend., 203–210; *People* v. *Rynders*, 12 id., 425, 429, 430; *People* v. *Baker*, 3 Hill, 159; *People* v. *Gates*, 13 Wend., 312, 322; *People* v. *Costello*, 1 Den., 83.) It was discretionary with the court to compel the prosecution to elect on which count they would proceed. (*Cook* v. *People*, 2 T. & C., 404.) It was competent to prove by the prosecutrix that she was pregnant. (*People* v. *Kenyon*, 5 Park. Cr., 255; 26 N. Y., 203–212; *Crozier* v. *People*, 1 Park. Cr., 453–457.) The promise of marriage made August 5, 1875, was valid, and each of the promises sufficient to bring the case within the statute. (1 Park. Cr., 453; 5 id., 254; 26 N. Y., 203; *Boyce* v. *People*, 55 id., 644; *People* v. *Kane*, 4 Abb., 15; 1 Colby's Cr. L., 713.) The fourth interrogatory in the deposition of Sylvester Parsons was properly excluded, being a communication between attorney and client. (Barb. Cr. L. [2d ed.], 428; Roscoe's Cr. Ev., 187, 188; 1 Whart. Cr. L., § 773, p. 732; *Graham* v. *People*, 63 Barb., 468–481.)

FOLGER, J. We will consider the points made by the plaintiff in error, *seriatim.*

First. The motion to compel the people to elect on which count of the indictment they would rely was properly denied. The indictment, in each of its counts, charged but one and the same offence, with such variations of allegation as were prudentially fitted to meet variations in the proof.

Second. It was not improper to show the time in the life of the prosecutrix, when her father and her mother died respectively. It was not of great importance to the case of the people, but it was not improper so to do.

Third. The conversation at Gaylord's was part of the *res acta* between her and the plaintiff in error. Like any other conversation or declaration of his upon the subject-matter, or bearing upon it, it was competent. That conversation, if it occurred, went to some extent to prove one of the chief elements of the alleged crime. The circumstances in which

it took place — the prosecutrix having been called, and arising, from her bed to hold it, at an advanced hour of the evening, showed relations between them, more than usually intimate and yielding on her part. As to these facts (save the purport of the conversation had), she is supported by other evidence.

Fourth. The question put to the prosecutrix : " Did you believe him when he had connection with you, that he would marry you?"; was proper. An affirmative answer would tend to make out, one of the important parts of the crime, to wit: That the consent of the prosecutrix to the intercourse, was given, under and by reason of the promise of marriage. A negative answer would have been decisive of the case, in favor of the accused. A like question was sustained, in the case of *Kenyon* v. *The People* (26 N. Y., 204); and in *Boyce* v. *The People* (55 N. Y., 644.)

Fifth. The direction to the prosecutrix, to go on and state in her own way, what occurred on the evening of the intercourse, was proper, as was the statement made by her in obedience thereto. It was of the very gist of the crime alleged, that she was thus directed to speak, and there was no better way, than for her to relate the story of it without prompting or hindrance from questions. The evidence was material and admissible.

Sixth. The testimony from the prosecutrix that she was in the family-way at the time of the trial, was not inadmissible and immaterial. She being, and having always been, an unmarried woman, the fact of pregnancy was positive proof of illicit connection with some one. It did not fix the plaintiff in error as a participant therein; but it was a fact in the case, not incompetent to be made known to the jury.

Seventh. The statute under which the plaintiff in error was indicted, declares that there shall not be a conviction upon the testimony of the female complaining, not supported by other evidence.

It is settled that the supporting evidence is required as to two of the matters named in the act, and as to them only.

They are the promise of marriage, and the carnal connection. (*Kenyon* v. *The People*, 26 N. Y., 203; *Boyce* v. *The People*, 55 N. Y., 644.) It is settled by the same authorities, that the supporting evidence need be such only as the character of these matters admits of being furnished. The promise of marriage is not an agreement usually made in the presence or with the knowledge of third persons. Hence the supporting evidence possible in most cases, is the subsequent admission or declaration of the party making it; or the circumstances which usually accompany the existence of an engagement of marriage, such as exclusive attention to the female on the part of the male, the seeking and keeping her society in preference to that of others of her sex, and all those facts of behavior toward her, which before parties to an action were admitted as witnesses in it, were given to a jury as proper matter for their consideration on that issue.

So, too, the act of illicit connection, and the immediate persuasions and inducements which led to compliance, may not be proved by the evidence of third persons directly to the fact. They are to be inferred from the facts; that the man had the opportunities, more or less frequent and continued, of making the advances and the proposition; and that the relations of the parties were such, as that there was likely to be that confidence on the part of the woman in the asseverations of devotion on the part of the man, and that affection towards him personally, which would overcome the reluctance on her part, so long instilled as to have become natural, to surrender her chastity. (See cases last above cited.)

Circumstances of this kind vary in weight in different cases, and it is for the jury to determine their strength. But, when proof is made of the existence of them, in some degree, it cannot be said that there is no supporting evidence. A court cannot then properly direct a verdict, or discharge the defendant in the indictment, on the ground that no case is made for the consideration of the jury.

In the case in hand, there was evidence of the existence

of both these classes of circumstances, furnished by witnesses other than the prosecutrix.

But the question in this case, takes a more particular nature. It is urged that the prosecutrix, in her testimony, limits the carnal communication to a single act. It is claimed that she specifies with exactness the very time at which that act was committed. Then it is insisted that the supporting evidence must also be confined to that very time. If the premises be conceded, I do not see that the conclusion necessarily follows. It is conceded by the authorities that direct evidence in support, is not capable of production, and that the requirement of supporting evidence is met, when from testimony of other witnesses such opportunities are shown to have existed, and such relations to have been formed, as to make it probable that the act may have been done. Now this general testimony cannot point to any particular time. From its nature it covers all the time of the existence of the facts which it establishes; and whenever during that period, the act is alleged by the testimony of the principal witness to have been accomplished, the supporting evidence attaches to that time, and brings its corroboration to bear upon that. It shows the chances in the hands of the suitor, for the commission of the offence, but it cannot beforehand predict just when he will be able to avail himself of them, nor can it afterwards say just when he did. When these circumstances and relations have been shown, the supporting evidence has been furnished. How great its strength, or how close its applicability to the act as spoken to by the principal witness, is for the jury to determine. It may be so weak of itself as not to form a basis for a verdict of guilty; or the details of the illicit act may be so given by the prosecutrix, as to be repugnant to common sense, and impossible of belief, notwithstanding the general supporting evidence; or she may be so contradicted as not to be credited.

Great stress is laid upon the alleged fact that the woman, in this case, has fixed the single act of intercourse on the evening of a certain day; and the plaintiff in error, it is

alleged, proved himself remote from her on that evening. Hence, it is said, that though he did have opportunity, from time to time, and did have her confidence, it cannot be found that he availed himself thereof. But we must bear in mind the question now in hand. It is, was there such testimony as that the court could suggest to the jury a verdict of acquittal; and the reason given to us why the court should have done so is, that there was no, or insufficient, supporting testimony. But there was the supporting testimony, which the law is satisfied with—proof of opportunity and confiding freedom of relations. Whether, as a fact, advantage was taken thereof, must still, in some measure, depend upon the testimony of the female. Whether that is to be believed, must depend upon its credibility. If she is so contradicted by positive testimony in rebuttal, or by facts and circumstances, as not to be believed, that is for the jury, and is one thing; but, whether she be believed or not, does not alter or destroy the supporting evidence. It has met the exaction of the law, and shown the circumstances demanded of it. That, in the midst of opportunities, and with the confidence of affection, the prosecutrix has fixed an impossible or an incredible date for the commission of the act, or has given such details as are incredible, or that she is, from anything in the case so unworthy of credit as to make a verdict of guilty unsafe to render, does not blot out of existence the opportunities and the confidential relations. They remain. The jury cannot reject them, though they may not believe her, and not believing her, may acquit the accused. Thus, it is seen that, in the case claimed by the plaintiff in error to exist, the question was not for the court whether there was not enough of supporting evidence. It was for the jury, whether the story of the female, of facts alleged to have occurred in the circumstances established by the supporting evidence, whether that story was credible. But the case does not rest altogether on such a state of facts as is above supposed. In the first place, the prosecutrix does not, in her testimony, limit the sexual intercourse between them to one

act thereof. She speaks affirmatively of only one. She does not affirm that there was no other. Nor was it so conclusively shown that the plaintiff in error was not at the place named by the prosecutrix on the night named by her, as that there was no question for the jury. She says that he was. He says that he was not. These two are the positive and direct witnesses. Mrs. Kimball and her husband do not fix with certainty the night or nights on which he was at their house. The husband, indeed, stated that it was his impression that plaintiff in error was there on the night of the first Thursday in August, the day named by the prosecutrix. Witnesses show the plaintiff in error on that day entering the lodge-room about 8 o'clock in the evening, which was in the same village with the house of Dr. Kimball. Witnesses show him leaving it at between 9 and 10 o'clock of that evening. It was between 9 and 10 that evening that the prosecutrix says that he came to Kimball's front door. The plaintiff in error says that he went from the lodge-room towards his house, in company with three persons, whom he names, who walked with him three-fourths of a mile from the village, where they sat down by the roadside and talked of lodge matters. Neither of these three persons is called to sustain the plaintiff in error, though it appears that one, at least, of them was, at the time of the trial, still residing there, and it is to be inferred that one other was also. It cannot be admitted, in view of such a state of the testimony, that it was demonstrated that the prosecutrix was in error in the night she named. At most, there was a conflict of evidence, most sharply between her and the plaintiff in error; and it cannot be said that he, more than she, is sustained by the other testimony. It was a fair question for the jury, on their judgment of the credibility of each of them, as made up from the incidents of the trial, which of them should be believed. Hence, the court made no error in refusing to direct an acquittal.

Eighth. Mr. Parsons, the attorney for the prosecutrix, was examined out of court. The question was put to him

by the plaintiff in error, whether he obtained from the prose-
cutrix, the facts stated in a complaint in a suit by her for
breach of promise of marriage. It was objected to by
counsel for The People and by the witness Parsons, that the
communication was a privileged one from client to counsel.
The complaint was not sworn to, nor was it read over to her
after it was made out. These latter facts appeared to the
court, before it passed upon the objection to allowing the
answer to that question to be read. We think that it was
right in ruling out the answer.

Ninth. The plaintiff in error asked the prosecutrix whether
she had not sworn before Esquire· Dox to a statement at the
time the question was put, read to her from what is conceded
was an affidavit made by her. This question was overruled,
and an exception taken.

We do not perceive the materiality of the question. The
statement was nearly in precise accord with her narration of
the same circumstances made both on her direct and cross-
examination, so that it would not have furnished a contra-
diction of her, if it had been permitted. The prosecutrix
had been re-called by the district attorney, and had testified
that she recollected another occasion of the plaintiff in error
being at the house at which she lived, an occasion testified to
by Mrs. Kimball, in whose family she was employed. It is
urged, that pressed by the rebutting and contradicting testi-
mony, which the plaintiff in error had given, the district
attorney saw the need, of presenting for the considera-
tion of the jury another occasion than that testified to
by her, on which the carnal connection might have
taken place. This contention seems too strained. There
is no claim or pretence in her testimony, when recalled,
that the connection was on that occasion. It does not
appear that it was urged to the jury, or in any way
claimed by the district attorney, that it took place at that ·
time. Besides, there was a purpose, for which it was prob-
ably offered. The plaintiff in error had testified that, on
the occasion named by Mrs. Kimball in her evidence, he had

been at her house in the evening; that he went at about 9 o'clock, and met the prosecutrix at the front door; stayed there about fifteen minutes; then went into the sitting-room, and remained there in conversation with Mrs. Kimball until about 11 o'clock, and did not remain at the house after that conversation. There was a pertinency to this testimony from the plaintiff in error. He was then attempting to show that there had been, before that time, growing up a coolness between him and the prosecutrix on account of her conduct, of which he did not approve, and which he had reprehended. This allegation that he did not remain with her but about fifteen minutes, though he stayed in the house near two hours, had a bearing upon that issue. Hence, it was pertinent to show, that he was in error in his statement. The prosecutrix seems to have been recalled for that purpose, and that seems the only legitimate effect of her testimony then given. She testified that after he left Mrs. Kimball's room he remained in the front hall with her over an hour, before he left for home. This being the legitimate effect of that testimony, and no other having been claimed for it, we perceive no pertinency to the question put to her on cross-examination, and which is above more particularly mentioned.

Tenth. There were certain exceptions to the charge. The court, after referring to the testimony of the plaintiff in error and other witnesses, in the nature of testimony to make out an *alibi*, went on to say that if it satisfied the jury that, at the time she testified to, he was not there, that that fact disposed of her evidence. The court added. "But it is proper for me to remark that, no matter when it"—the illicit connection—"did take place, provided it was after the promise of marriage, and the consent, on her part, was in consequence of the promise of marriage." As a legal proposition, this cannot be deemed objectionable. It is criticised from its relation to the facts of this case, as tending to mislead the jury.

We do not think that this was a direction to the jury, to inquire whether there was an illicit connection on some day

after a promise of marriage other than that fixed by the complainant. It was rather a limitation given to the jury, that if they should find that there was illicit connection, they must find that it was after a promise of marriage and in consequence of it. It is argued here, by the plaintiff in error, and was doubtless argued to the jury, that the promise of marriage testified to by the prosecutrix as having been made in May, was not an absolute promise, but one conditional on the ability of the two to maintain themselves in the married state; and so too as to the promise made at the time of the connection, that it was conditional on that connection resulting in pregnancy. I conceive that it was to this that the court meant to apply its remark excepted to ; that whenever the promise of marriage was found to have been made, the act of coition must have followed that, and been consequent upon it. The context of the charge, both before and after the remark, shows that the court did not mean, and could not have been understood to mean, to instruct the jury to look for another time at which the carnal intercourse took place than that fixed by her. For both directly before and directly after, the court dwells upon the importance of the testimony of the plaintiff in error and his witnesses, in testing her credibility and the truth of her evidence, as to the commission of the offence at the particular time fixed by her.

Eleventh. There were certain requests to charge, which were refused, and exceptions taken.

1st. If the two were engaged to be married in May, the fact that the connection was in August was not enough to bring the case within the statute.

2d. The second seems but a repetition of the first.

3d. If the plaintiff in error promised to marry her in May, and if mutual promises were not then made, then the subsequent promise in August is not a sufficient promise to bring the case within the statute, even though he did have connection with her at the time.

4th. If the two were mutually engaged to be married

in May, 1875, then the after illicit intercourse does not bring the case within the statute.

The court refused to charge as requested, except as it had charged, but did instruct the jury that they must find from the evidence that the connection took place; that if it took place after the promise of marriage and in consideration thereof, that it was immaterial whether the promise was made in May or afterward, if it was before the seduction; that the promise might be made and the connection take place afterward, and the crime be committed, if that connection was in consequence of that prior promise; and that the jury, in the opinion of the court, would be justified in finding a promise from her evidence if it was supported. The court had before these requests charged that if the promise of marriage was made, as testified to by her, that was sufficient under the statute. It is not easy to determine from the case just what was in the mind of counsel when making these requests. If it was that some time having elapsed between the making of the promise and the doing of the act, therefore the statute would not apply, he was clearly in error; if it was that the promises either of May or of August, being conditional, therefore the statute would not apply, he was clearly in error. (26 *N. Y.*, *supra;* 55 *N. Y.*, *supra.*) His argument here is, that he sought to get from the court a ruling as to which promise the court referred to, in the charge in chief, by the use of these words: " Did this illicit connection take place in consequence of a reliance on her part upon his promise of marriage?" Clearly he was not entitled to insist upon the court or the jury being confined to one promise if there had been more than one. Nor is the remark of the court above quoted necessarily to be confined to one promise of marriage as is claimed. The phrase, " his promise of marriage " is not restrictive, but used in a general sense, as the court would have used the like phrase of " his conduct," as applying to all of his conduct.

It is suggested that the third request and refusal of it, and exception, bring up a question which we will state. The

prosecutrix testified that illicit connection took place in August; that when he proposed it she said he knew such things were not right; to which he made answer that she must remember "that it was him and her and it was all right," and that she knew if anything happened he would have her; that she asked him if he would not leave her, to which he replied, no, he would stand his ground. Now, it is said, that is not a promise of marriage in any event, but only in the event that she conceived from the carnal intercourse; and further, that the yielding to his request was not in consequence of a promise of marriage, but in consequence of a promise that if there were ill results from the intercourse that then he would marry her. It is suggested that this is not such a seduction under promise of marriage as was contemplated by the statute. As to this suggestion, we remark at first, that the plaintiff in error did not present to this court that point; second, that the testimony does not confine the yielding of the prosecutrix to a reliance upon a promise to be fulfilled only in the event of pregnancy. She asked him if he would not leave her. We construe this, not as confined to the event of conception, but as embracing the whole act which he proposed under the relations existing between them, and as it is explained by the subsequent testimony by her, that after he had succeeded she told him that she was sorry that she had given up to him, for she did not think that he would think as much of her again. We do not think that the occurrence and the conversation, as related by her, is susceptible of the interpretation that her mind was occupied with the result of connection. That idea does not come from her but from him. Her utterance is that it is not right. The act itself is wrong, is her thought. His answer is not, that it is always right, but that she must remember that it is he and she, and that it is all right, evidently meaning, and meaning to give, and giving the idea, that in the close and intimate and pledged relations existing between them, it was right, as it was but anticipating the time when it would be his right to ask and her duty to yield. The

remark as to anything happening was from him, and was another argument used by him.  She does not base upon such a probability her inqiury, if he would not leave her.

We are not able to see from the testimony, that there was room for the jury to find that there was a promise then based alone upon the result of pregnancy; that she was seduced in reliance upon a promise to be fulfilled only in such event.

We are not called upon to say therefore, whether such a promise and such a yielding would make a case sufficient for the requirement of the statute.  We do not mean to intimate an opinion either way.

We have gone through the whole of the testimony presented in the error book, with care.  We have considered every point presented by the plaintiff in error upon his brief. We do not find that the court below made any error in its rulings on the trial, or in its charge, or refusals to charge.  It was a case for a jury.  They have listened to and observed the prosecutrix and the plaintiff in error, and the witnesses produced.  They have found the plaintiff in error guilty. No reason is shown to us for our interference with the verdict and the judgment upon it.

CHURCH, Ch. J., dissented, on the ground of a want of corroboration as to the intercourse.  The prosecutrix testified that on a certain Thursday evening, the 5th day of August, the prisoner came to the residence of Dr. Kimball, where she resided; that she met him in the hall, and, after a little conversation, the intercourse took place, and that the prisoner then went home.  The evening is identified with particularity, and circumstantial precision.  It was a "lodge night," when the prisoner usually called; it was before the prosecutrix attended the last day of a certain school, and that occurred on Friday, the next day; it was after the return of Mrs. Kimball, from an absence of several weeks, which was Tuesday evening before.  It was prior to Monday the eighth when the prosecutrix had her monthly periods,

as she states.   There is no evidence and no claim that the prisoner ever had intercourse with the prosecutrix at any other time.   The statute requires support or corroboration of the prosecutrix.   She is not only not corroborated as to this circumstance, but all the evidence is in conflict with her statement.   Mrs. Kimball's evidence tends strongly to establish that the first occasion, when the prisoner called at the house after her return, was Saturday evening, and she states circumstances entirely inconsistent with those related by the prosecutrix, when the intercourse took place.   She states that on that evening the prisoner visited with her until about eleven o'clock, when he went home.   Other evidence tends to establish that the prisoner did not see the prosecutrix on that evening, nor on any evening after Tuesday until Saturday.   Corroboration by opportunity and the like may be sufficient, but having fixed time, place and circumstances, if these are not supported by any evidence, but contradicted by all the evidence, the prosecutrix is not sustained or corroborated by proof that intercourse was possible on some other occasion than that testified to by her.   The question is whether she is supported by other evidence, and not whether she ought to be credited.   The statute requires supporting evidence, and, after a careful examination, I am unable to find any.

All concur with FOLGER, J., except CHURCH, Ch. J., dissenting.

Judgment affirmed.