Ingalls, J.
The prisoner has been convicted of the crime of manslaughter in the second degree, which is defined by the Penal Code as follows:
Section 193. Such homicide is manslaughter in the second, degree, when committed with the design to effect death, either
*416 First. By a person committing, or attempting to commit, a trespass, or other invasion of a private right, either of the person killed, or of another not amounting to a crime; or
Second. In the heat of passion, but not by a dangerous • weapon, or by the use of means, either cruel or unusual; or
Third. By an act, procurement, or culpable negligence of any person which, according to the provisions of this chapter, does not constitute the crime of murder in the first or second degree, nor manslaughter in the first degree.
The jury were justified, by the evidence, in finding the defendant guilty within the third subdivision of the said section. And the indictment properly charged the offense. The People v. Buddensieck, 103 N. Y., 488; 3 N. Y. State Rep., 664.
. At the time of the shooting, the defendant was in citizen's dress, showing no insignia of office, and possessing no powers authorizing an arrest. There was no evidence that the deceased had been guilty of any offense. On the contrary, his good character was expressly admitted by the defendant upon the trial. He was returning, by a public street, to his home, after a proper absence, and was shot within -a few rods of his residence. The only circumstance, in the conduct of the deceased, relied upon, to justify the act of the defendant, was that, when pursued by the defendant, he ran toward his home. The defendant was a stranger, and exhibited nothing to indicate that he was an officer. It is true that he states that he hollooed to Doring to stop and that he was an officer, but there is no evidence to the effect that Doring heard him before the firing, and it appears. that both were running at the time. In answer to this inquiry by the court, “When you hollooed to him the third time, to stop, how soon after did you fire ? ” the prisoner answered, “Just as quick as I could get .the revolver out of my pocket.” While the conduct of a public officer, when in the honest and faithful discharge of a duty, should be favorably considered by the court and jury, such favorable construction should not be carried so far as to justify an act of unnecessary and inexcusable rashness by which the life of an unoffending citizen has been sacrificed. The necessity should be extreme, indeed, to justify an officer in resorting to so dangerous an expedient as that of discharging a pistol at or in the direction of a person who is unknown to the officer and, at the time, is offering no resistance, and not discovered in the commission of any crime, or known to have perpetrated any offense whatever.
*417 The mere fact that a person is seen to run upon the public street, in the night-time, especially when pursued by a stranger, certainly furnishes no justification for an officer to shoot at him, even though burglaries have been recently committed in the neighborhood, and the officer was searching for the offenders. After, according to the prisoner, every reasonable indictment which the facts disclosed will justify, we are not able to conclude that the jury were not fufiy justified in rendering the verdict which they did.
No fatal error was committed by the court, in refusing to require the district attorney to elect upon which count of the indictment he would proceed, nor in declining to direct a verdict of acquittal as to certain counts in such indictment, upon the grounds stated by the counsel for the prisoner. The decision upon such motions involved an exercise of discretion by the court to such an extent that nothing short of an apparent abuse thereof, which can be seen to have prejudiced the case of the prisoner, should induce the court to interfere. Armstrong v. The People, 70 N. Y., 38; Hawker v. The People, 75 id., 487; The People v. Reavey, 38 Hun, 418.
The jury rendered a verdict, under the count of the indictment, which charges manslaughter in the second degree. No uncertainty is shown to exist in regard to the grade of offense of which the prisoner was found guilty by the jury. Nor are we at liberty to assume that the jury misapprehended the law by which they were governed in applying the evidence. Nor that they failed to comprehend the charge in the indictment upon which they found the prisoner guilty. The evidence sustains the verdict which was rendered. We fail to discover wherein the case of the prisoner has in any respect been prejudiced by the refusal of the court to direct such verdict of acquittal. Thorn v. Turck, 94 N. Y., 90.
The statement made by the deceased to his mother of the case was stricken out by the court, upon the motion of the defendant’s counsel which cured any error which may have been committed by its reception. The court, in his charge, instructed the jury as follows: “The defendant attempts to justify the fact of killing. It is for the defendant to satisfy you that if you find as a matter of fact, that the killing was done, and that the defendant did it, that he was justified in the act.”
If this instruction to the jury, when construed in connection with what has been previously stated to the" jury by the judge was erroneous, the error was cured by the further direction, as follows: “Defendant’s counsel excepted *418 to the following portions of the charge. If you find the fact of killing, that then the defendant must satisfy you that he was justified in the act, and asked the court, in that connection, to charge that the burden of proof is upon the People all through, that the defendant is not obliged to satisfy the jury of anything.”
To which the judge replied, “Yes, I so charge.” The charge, in that respect, was left precisely as the defendant’s counsel requested, and consequently he has no reasonable-ground to complain thereof. If the defendant required any further modification of the charge in that regard, it should have been requested. It will be perceived that the judge charged, at the request of defendant’s counsel, the following proposition: “If the act was necessarily committed, by attempting, by lawful ways and means, to apprehend Boring: if a felony had been committed, and defendant had reasonable ground to believe that Boring was guilty thereof although it afterwards transpired that Boring was inno • cent, then the killing was justifiable, and .they must find a verdict of not guilty.”
This was certainly most favorable to the prisoner. And considering the entire instruction which the jury received upon this question, we perceive no substantial ground of complaint in that respect, on the part of the defendant. It was not error in refusing to charge the following proposit • ion: “If the defendant was in the discharge of a lawful duty, as a public officer, the killing was justifiable, and the jury must find a verdict of not guilty. ” This involved an inquiry in regard to the act performed, and the manner it was executed by the prisoner, and the necessity of resorting to the means adopted. And the determination of all those elements properly belonged to the jury. A careful consideration of this case has led us to the conclusion that no error has been committed, prejudicial to the prisoner, or which calls for a reversal of the conviction. It would be difficult, if not absolutely impossible to define with precision, under what circumstances a public officer would be justified in resorting to a deadly weapon, even when in the discharge of his duty.
Every case must, of necessity, be determined in the light of its surroundings. Prudence, and a proper estimate of human life should deter an' officer from a. hasty and inconsiderate resort to such an extreme measure, so likely'to be attended with serious consequences. There should exist a pressing necessity, arising under such circumstances as clearly indicate that a resort to such a hazardous expedient is not only necessary, but, at least, apparently unavoidable. The-officer must not consider himself the sole judge of such necessity, while it is true he is called upon to decide, and act, *419 in the first instance, yet he should remember that his conduct is subject to review by the court and jury, which is necessary for the protection of the citizen. The faithful officer, when acting with reasonable prudence and discretion, may encounter an enemy when, to protect himself 1 from bodily harm, or to preserve the peace, may find it necessary to use a deadly weapon, and in such case, the officer need apprehend no injustice at the hands of the court or jury. That a person is discovered to be running upon a public street in the night time does not furnish such evidence that he has been guilty of committing crime, as will justify an officer to fire at him, even though such person should fail to obey the command of the officer to stop. The person thus challenged by the officer may be deaf or so far absorbed by an emergency which requires haste, as not to hear or understand the command of the officer. As has before been stated, the prisoner was in citizen’s dress, and exhibited nothing to show that he was an officer. The conviction should be affirmed.
Learned, J., concurs.