## WILLIAM HUDDLESTON *vs.* LOWELL MACHINE SHOP.

In an action brought by a servant against his master to recover for personal injuries re-
ceived by him in breaking and falling through a floor in his master's shop, over which it
was his duty to pass, it appeared that he knew that the floor was decayed and that there
were holes in it; but it did not appear that he could have ascertained that the place
where he broke through was dangerous, without examining parts of the floor not open
to his inspection. *Held,* that the court could not say that he was guilty of negligence;
and that the question was for the jury.

TORT to recover for personal injuries caused by a defect in the
floor of a room in the defendants' machine shop.

At the trial in this court, before *Gray*, J., the plaintiff testi-
fied : " In February 1869 I was a watchman in the Lowell Ma-
chine Shop, and had been employed there for three or four years.
At half past four every morning I had to slush the gears over the
turbine wheel at one end of the room where the accident hap-
pened, and the main gears at the other end ; and occasionally the
gears of two pumps, one on each side of the room. On Feb-
ruary 1, 1869, after slushing the gears over the wheel, I de-
scended the steps which led to them, and was crossing the floor
to slush the main gears. I took my usual path, the direct path
to the main gears, and after I had proceeded about four or five
feet from the bottom of the steps the plank of the floor gave
way, and I went down as far as my hips, and injured my hip.
The part that gave way did not spring back ; but whether it
went down I cannot tell. The tail race was under it ; but I did
not know of this until I fell. I had the usual light, three gas
burners, which gave a good light, and which I had lighted before
beginning to slush the gears, one at each gear, and one hanging
between the steps from the wheel and the pump on that side of
the room. This light was convenient to the hole into which I
slipped. You could pass under it. I cannot tell whether it was
nearer or further from the wheel than the hole." On cross-
examination, he testified : " I had been employed there as a
watchman between one and two years, and had the same duties
all the time as on the night of the accident. Among other duties
I had to clean up the floor with a shovel and broom ; I put saw-

dust on, and cleaned it off once a week. The room is half as large as the court-room. I lighted the gas, and started the pumps, and then went to slush the gears. After slushing the gears and coming down the steps at the wheel, I went to slush the main gears. I had no intention to slush any other gears that morning, or to go anywhere before I slushed the main gears. The plank gave way under my foot. There was no hole under my foot; that I knew by my eyesight. I heard the plank crack, and felt the floor giving way. I generally cleaned the floor on Saturday or Sunday morning. The accident was on Monday. I cleaned the floor either on Saturday or Sunday morning before the accident, I could not tell which. In cleaning it, I had to use a shovel to scrape up sawdust and other dirt. In the floor there had been three holes for some time. One hole was covered by sheet iron from the time I went on the watch. I have put the sheet iron over the hole when it was knocked off. It was not nailed on. That hole was about half the size of the register of the furnace in the court-room; longer and not so wide. I do not know about the size of that hole. Another hole was where the weight of the gears had sunk through. A third hole was on the opposite side of the floor. I saw this nine months or a year before the accident. It was a foot long, but narrow. I put a board over it by direction of the overseer of the yard and of the watchmen. I did not nail the board down. I did not know anything about the condition of the floor. I could see that it was decayed; and had noticed that when I walked over the floor it would give, and when I used the shovel it would come up with scraping, the same as decayed wood. I did not know that it was dangerous. I told the overseer, six months before the accident, that the floor was decayed, and that it ought to be seen to and fixed. I never went back to see what sort of place was made by my breaking through. I should judge it was one foot wide, one plank apparently, and four feet long. It looked as if the whole of the plank had given way."

A carpenter who repaired the floor after the accident testified: " The old floor was taken out. It was rotten, and broken through in some places. In one place it was squashed down, and there

were a couple of planks over the worst place, over the wheel pit at one side, between the steps and the boiler room ; another close to the pump on that side, as if the end of a plank had broken through. When I took the old floor up, I found the planks rather decayed, some of them, and some not so very bad. I was present when the broken plank was removed ; it was pretty rotten."

Two other witnesses, one of whom helped to take out the old floor, testified that some of the planks were quite rotten, particularly in the neighborhood of the wheel, and many were broken at one end, and others were sound ; and another witness, who was the plaintiff's assistant in his work, testified that he " observed the condition of the floor as far as walking over it," that the planks would give under his foot, and that he saw a piece of sheet iron laid over a hole in the floor.

Upon this evidence, and upon testimony not material to be stated as to the extent of the injury, the plaintiff rested his case ; the defendants introduced no evidence, and contended that the evidence would not warrant a verdict for the plaintiff ; and the judge reserved the case for the consideration of the full court, the parties agreeing that if the evidence would not warrant a verdict judgment should be rendered for the defendants, and if it would the case should stand for trial.

*C. Cowley*, for the plaintiff.

*T. H. Sweetser & J. F. McEvoy*, for the defendants.

CHAPMAN, C. J. From the nature of the case, it must happen that the subject of the liability of an employer to his workman, who is accidentally injured while engaged in his service, will present itself to courts of law in a great variety of forms, for there are in almost every case some peculiar circumstances. The decisions are very numerous on this subject, both in this country and in England, but the general principles by which they are governed are well established. It is not necessary to advert to the cases, for the principles are sufficiently stated in *Gilman* v. *Eastern Railroad Co.* 10 Allen, 233, and 13 Allen, 433.

The evidence in this case does not tend to show that the defendants' machine shop was not properly built, but it does tend

to show that a portion of the floor, over which the plaintiff had occasion to pass in the discharge of his duty, had been for a considerable time in a state of decay, and had become unsafe. It also tends to show that the defendants knew, or by the exercise of reasonable diligence would have known, what its condition was, for they had the means of making as thorough an examination as could be necessary to learn its condition, not merely by observing its surface, but by going under it and examining the foundations on which it rested, as well as the extent of the decay. And if they were negligent in allowing it to become rotten or dangerous, or in not making themselves acquainted with its condition, so far as they could do so by reasonable diligence, they had made themselves liable to any of their servants who should be injured by the defect, unless he also was negligent. The principle is well stated in *Paterson* v. *Wallace*, 1 Macq. 748, that a master is bound to use all reasonable precautions for the safety of his workmen, and it is his duty to be careful that his servant is not induced to work under a notion that tackle or machinery is staunch and secure, when in fact the master knows or ought to know that it is not so. The same principle applies to a building or structure of any kind. We can have no doubt that the evidence is sufficient to authorize a jury to find that the defendants were in fault in respect to the decayed and unsafe condition of their floor.

But in order to enable the plaintiff to recover, he must prove that he has not been careless or rash. In *Priestley* v. *Fowler*, 3 M. & W. 1, it is well stated, that "the mere relation of the master and the servant never can imply an obligation on the part of the master to take more care of the servant than he may reasonably be expected to do of himself. He is, no doubt, bound to provide for the safety of his servant in the course of his employment, to the best of his judgment, information and belief. The servant is not bound to risk his safety in the service of his master, and may, if he thinks fit, decline any service in which he reasonably apprehends injury to himself; and in most of the cases in which damage may be incurred, if not in all, he is just as likely to be acquainted with the probability and extent of it as the master."

If he has such knowledge, he is negligent in disregarding it, and takes the risk. It has been decided that if there be a hole in a floor over which he has to pass in the dark, and it is not lighted or guarded, and he knows its condition but chooses to pass in the dark, he does so at his own risk. *Seymour* v. *Maddox*, 16 Q. B. 326. There are many employments that are known to be dangerous, and sometimes business is carried on in buildings or other places that are obviously unsafe, or with machinery and implements of the same character. In such cases, the workman takes the risks which he knows to be incident to the place and to the business.

In this case, the evidence shows that the plaintiff had some knowledge of the condition of the floor. If it was sufficient to put him on his guard at the time, he cannot recover. But from the nature and condition of the building, and the nature of the defect, the court cannot say that the plaintiff could, without having examined the parts of the floor that were not exposed to his inspection, be aware that there was danger at the place where he broke through. If it would require an inspection of the under side of the floor, or of the parts of the building under it, to make him aware of the danger, then the injury might have happened without his fault. The evidence on this point should be submitted to a jury, to determine, under proper instructions, whether he used due care at the time of the accident.

*Case to stand for trial.*