JOHN NORTHCOATE *vs.* ABRAM BACHELDER & another.

In an action by a servant against his master to recover for injuries occasioned by his falling into a barrel of hot water, alleged to have been negligently put by the master on his premises, it is no ground for exception that the judge refused to give a ruling as to the effect on the liability of the parties of an internal or hidden defect in the barrel, if there was no evidence in the case to call for such ruling.

TORT by a servant against his masters to recover for injuries occasioned by his falling into a barrel of hot water which the defendants had negligently put and allowed to remain in the ground. Writ dated February 24, 1871. Trial in the Superior Court, before *Pitman,* J., who, after a verdict for the plaintiff for $200, allowed the following bill of exceptions:

"It appeared that the plaintiff was employed as a day laborer by the defendants, who were running a saw and lumber mill

that the second day of his employment he was directed by them to fill in a drain which had been opened upon their premises; and that he had proceeded in shovelling in the dirt till within a few feet of the building, when suddenly one foot, which was standing on the pile of dirt by the side of the drain, slipped by the earth giving way, and he fell back, the left leg going into a sunken barrel of hot water, scalding it severely. The plaintiff testified that this was the first he knew of any such place on the premises.

" From the defendants' evidence, it appeared that they had no experience in the use of steam apparatus until early in the year 1870, when they erected this mill; that they had taken care to select a skilful and experienced engineer, one Parker, and there was other evidence that Parker was such; that at first the spent steam came out of the building in an open pipe, and condensed into water, making the ground near the building, and where the men had occasion to stand in piling lumber, muddy; that the defendants found fault with this, and asked Parker if he could not arrange it so as to prevent this nuisance; that Parker said this was a mere temporary arrangement, and it was also desirable to save the water, and he would see what he could do; that he spoke of a condensing barrel; that the defendants told him to fix what was proper, safe and right, that they should have to stand there, and that it must be perfectly safe; that they gave him no limit in regard to means or expense; that they only instructed him to put in something that would condense the water under ground; that a day or two afterwards Parker suggested using this barrel, which was about the premises, and was an oil cask, holding thirty or forty gallons, from which they had just used the oil; that they did not remember seeing the barrel; and that they made no test of it, and gave him no instructions as to what he should put over it, but left it all to him. Parker testified, among other things, that when he told the defendants that he proposed to put in a barrel, they had some talk about it, and told him to go on and complete the arrangement; that he suggested taking this barrel; and that the defendants told him to put in something safe and proper.

" It also appeared that Parker was by trade a cooper ; and he testified to sounding the head of the barrel when put in, and that it was tight and sound. This was in the spring of 1870. He also testified that it was placed from six inches to a foot below the surface of the earth. The defendants further testified that it never occurred to them but that it was perfectly safe ; and there was evidence tending to show that they and their employees at some time walked and stood over the covered barrel ; that they did not know what depth the barrel was put under the ground, but left it all to Parker ; and that after this accident it was covered with two inch plank. It also appeared that this barrel was connected by a pipe with what was called a ' hot well,' from which the water was pumped to be again used in the boiler. There was other evidence not necessary to explain this bill of exceptions.

" The defendants asked the judge to rule as follows : ' 1. The relation of master and servant does not imply an obligation on the part of the former to take more care of the latter than the master may reasonably be expected to do of himself. 2. If the injury complained of was occasioned by an internal or hidden defect in the barrel, which was unknown to the defendants, and could not have been discovered by such an examination as a careful and prudent man, exercising due care and diligence, would have made, then the defendants are not liable. 3. If the defendants used due care and precaution in selecting Parker, and gave him unlimited authority as to the plan to be adopted, materials to be used, and expense to be incurred, in remedying the difficulty caused by the steam and water coming out so near the surface of the ground, but with express instructions that whatever he did he must make secure and safe, and he, under such authority and instructions, placed the barrel in the ground and covered it up as testified, knowing, at the time he did so, that the defendants and their servants would frequently walk over and stand upon it, and the injury resulted from the insufficiency of the barrel for the purpose for which it was used and the manner in which it was placed, or from some defect therein, wholly unknown to the defendants, then they are not liable. 4. If the

defendants used due care and precaution in selecting Parker, and had no knowledge or experience in setting up or operating steam-engines, or making connections or provisions therefor or in relation thereto ; and he, knowing that they and their servants would have occasion to frequently walk and stand upon and over the barrel, advised them that it would be safe and prudent to set a barrel in the ground in the manner and for the purpose which he did, and they, relying upon his judgment and experience, permitted him to so set the barrel, but with express instructions to make it safe and right for all such use; and they took as much care of the plaintiff, in exposing him to any accident or danger that might arise from walking over or standing upon the barrel, as they might reasonably be expected to do of themselves, and the injury was occasioned through the insufficiency of the barrel, or from some defect therein, of which the defendants had no notice or knowledge, then they are not liable. 5. If a master use due care and precaution in selecting his servants, and does not limit them in the kind or amount of materials to be used or expense to be incurred, or plan to be adopted, in the work or business intrusted to them, he is not liable for injuries to one of his servants resulting from the carelessness or negligence of a fellow-servant, or from the insufficiency or defect in the materials used or plan adopted, by the servant in fault, unless the master knew of such insufficiency or defect.'

" But the judge declined to give any of the foregoing instructions in the terms there used, but did instruct the jury upon these points as follows : ' Any person who allows a dangerous place to exist on his premises is responsible for an injury caused thereby to any other person who enters on the premises by his invitation in the use of due care and without notice of the danger. An' employer is under an implied contract with his servant to furnish a suitable place in which the servant, exercising due care, may perform his duty without exposure to dangers not coming within the obvious scope of his employment. But this implied contract is not to be understood as importing an absolute liability for the safety of the workman's place. The master cannot be supposed to warrant to the servant the safety of his situation. The law im-

plies only that he shall do what a man of ordinary care might reasonably be expected to do, taking into account all the circumstances of the case, to guard the servant against the particular peril incurred. He is not an absolute insurer, and as such answerable for the result, but he is only answerable for negligence. This implied contract of the master is not a contract to execute in person all the work connected with the fitting up of his establishment, or the arrangement of his premises. It is in effect only a contract that he has done and will do all that may reasonably be expected of men of ordinary care, prudence and sagacity in like circumstances, and that he will do it in the way and by the instrumentalities by which such men are accustomed to act. Where the work of preparing machinery or arranging the premises, in the ordinary course of business, requires the employment of persons skilled in trades or mechanical occupations, the master may properly employ such, and if he use due care and precaution in selecting them, and gives them unrestricted use of means in the work intrusted to them, he is not responsible to his servant for injuries arising from their carelessness or negligence or from the insufficiency or defectiveness of the materials thus used by them, unless the master knew, or in the exercise of reasonable and ordinary care should have known of such negligence or defects. And under the above rule and its limitation, the defendants, if they used due care in selecting Parker as their engineer, would not be answerable for his fault in such part of the work as came within the scope of his employment or was properly intrusted to him. And if any part of the condensing arrangement adopted required the skill and judgment of a cooper, and the defendants were justified in believing that Parker had such skill and judgment, and in intrusting the work to him, then they would not be responsible for his default in such part. But if the jury find that the placing of such a barrel in such a place and for such a purpose was not a matter within the scope of an engineer's or cooper's trade, or in the ordinary course of affairs intrusted to the judgment of . such, but was a matter demanding only common sense, judgment and experience, and that the defendants consulted with Parker before the work was done, and assented to the method adopted by him

and further find that the work so done and the arrangement made was in fact so unsuitable and unsafe that men of ordinary care, prudence and sagacity would not usually adopt it, then the defendants would be liable for negligence.'" The defendants alleged exceptions.

*J. N. Marshall*, for the defendants.

*W. S. Knox*, for the plaintiff.

BY THE COURT. The question of the defendants' liability in this action was properly submitted to the jury, under instructions accurately stated, carefully guarded, and conformed to the decisions of this court. *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572. *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282. There was nothing in the evidence in the case to call for any instruction as to an internal or hidden defect in the barrel, and all the other instructions requested were fully covered by the instructions given. *Exceptions overruled.*