THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES J. EVERHARDT, Appellant.

*Court of Appeals, March* 1, 1887.

Affirming 42 Hun, 659, Mem.

1. *Evidence. Accomplice.*—The provision of section 399 of the Code of Criminal Procedure is complied with, if there is some evidence fairly tending to connect the defendant with the commission of the crime, so that his conviction will not rest entirely upon the evidence of the accomplice. Whether the evidence is sufficient corroboration of the accomplice, is for the *determination* of the jury.
See note at end of this case.

2. *Same. Other forgeries.*—Upon the trial of an indictment for forgery, it is competent for the prosecution to prove the uttering by defendant, of other forged checks upon other occasions, not for the purpose of showing other crimes than that charged in the indictment, but for the purpose of showing his guilty knowledge and intent in uttering the check in question.

3. *Criminal law. Fictitious name.*—Where the defendant is indicted by several fictitious or alias names, and his true name is discovered upon the trial, and inserted in the indictment and other proceedings, though they may, with propriety, have been omitted in the administration of the oath to the jurors and witnesses subsequently, their repetition, in such case, is not error, and it cannot be assumed that any legal harm was thereby done to the defendant.

4. *Same. Pronouncing judgment.*—Where, after the rendition of a verdict of guilty, the defendant, at the request of his counsel, was remanded until a day named, to enable him to make a motion for arrest of judgment and for a new trial, but no motion was, on the day named or during the term, made by either party, and defendant was brought up for sentence at the next term of the same court, and judgment was moved, which was opposed on the ground that the court had no jurisdiction, it may be fairly assumed that the defendant, by not appearing, or offering to appear, on the day named, and by not objecting, waived the delay, within the meaning of section 472 of the Code of Criminal Procedure, and that the court had not lost jurisdiction to pronounce judgment on a subsequent day.

Appeal from a judgment of the general term of the su-

preme court, affirming a judgment of the court of general sessions, in and for the city and county of New York, entered upon a verdict convicting defendant of the crime of forgery in the second degree.

*A. Suydam*, for appellant.

*McKenzie Semple*, Assistant District Attorney, for respondents.

EARL, J.—The defendant was convicted in the court of general sessions, in the city of New York, of the crime of forgery in the second degree, committed by uttering a forged check, knowing it to be forged. Prior to his conviction one Gaylord had been convicted of the same offense for uttering the same check, and had been sentenced to the state prison at Sing Sing. He was produced as a witness on the trial of the defendant, and testified that he received the forged check from him, and was induced by him to attempt to obtain the money upon it from the bank upon which it was drawn. He was therefore an accomplice, and the objection is now made that his testimony was not sufficiently corroborated under section 399 of the Code of Criminal Procedure, which provides that " a conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime." Prior to the enactment of this section, it was customary for judges to instruct jurors that they should not convict a defendant of crime upon the evidence of an accomplice unless such evidence was corroborated ; and yet it was the law in this state that a defendant could be convicted upon the uncorroborated evidence of an accomplice, if the jury believed it. This section has changed that rule of law, and requires that there should be simply corroborative evidence which tends to connect the defendant with the commission of the crime.

Here, without referring particularly to the evidence of Schulken and of Caroline Gaylord, we think such evidence was sufficient to show some active agency on the part of the defendant in uttering the check, and thus to connect him with the commission of the crime, and that satisfies the law. Whether that evidence was sufficient corroboration of the accomplice was for the determination of the jury. The law is complied with if there is some other evidence fairly tending to connect the defendant with the commission of the crime, so that his conviction will not rest entirely upon the evidence of the accomplice.

Upon the trial the people were allowed to prove, against the objection of the defendant, the uttering of other forged checks by him upon other occasions. In this there was no error. The defendant, by his plea of not guilty, had put in issue everything which it was incumbent upon the people to prove. They had no direct or positive evidence that he personally forged the check which he uttered, and it was open for him to show that at the time he uttered it he had no knowledge that it was forged, and was therefore innocent of crime; and, for the purpose of showing the prisoner's guilty knowledge in such cases, it has always been held competent to prove other forgeries. Mayer *v.* People, 80 N. Y. 364; People *v.* Shulman, Id. 373. Such proof is not received for the purpose of showing other crimes than that charged in the indictment, but for the purpose of showing the guilty knowledge and intent, which are elements of the crime charged, and it can be considered by the jury only for that purpose.

Although the evidence of Gaylord, corroborated, as it was, as to the guilty knowledge of the defendant, was quite clear and convincing, yet the people were not bound to rest upon a *prima facie* case, but had the right to confirm that evidence by the proof as to the uttering of other forged checks.

The defendant was described in the indictment as

" George Hartman, otherwise called George Peters, otherwise called Wash Market Jake, otherwise called Charles Coke, otherwise called Charles McGloin." Upon the trial of the action these names were repeated by the clerk in the oath administered to the jurors challenged, and the counsel for the defendant objected to the repetition of such names, on the ground that it tended to prejudice the defendant in the minds of the jurors ; and he admitted and offered to prove that the true name of the defendant was Charles J. Everhardt. The trial judge stated in reply that he could see no objection to the clerk inserting in the subsequent proceedings the name which the defendant asserted was his true name, and referring to the fact that he was indicted under another name. The defendant's counsel excepted, and again asked the court to instruct the clerk, in swearing the jurors and witnesses, that he should designate the defendant as Charles J. Everhardt, and omit the fictitious names. The court replied that he would instruct the clerk to designate the defendant as Charles J. Everhardt, and would allow him to state the several other names. To this ruling the defendant's counsel excepted. Thereafter, throughout the trial, at each administration of an oath the clerk, under the instructions of the court, designated the defendant as " Charles J. Everhardt, indicted as George Hartman, otherwise called George Peters, otherwise called Wash Market Jake, otherwise called Charles Coke, otherwise called Charles McGloin.'' At each repetition of these names, defendant's counsel objected thereto, and moved that the defendant be designated by the name of Charles J. Everhardt, and not by the fictitious names. The objections were overruled, and the motion denied, and defendant's counsel excepted. It appeared from the examination of some of the jurors that they were prejudiced by the fact that the defendant appeared to have so many diffierent names and they were excluded from the jury on that account, and 12 jurors were finally impaneled against

whom there was no objection. Section 277 of the Code of Criminal Procedure provides that "if the defendant is indicted by a fictitious or erroneous name, and in any stage of the proceeding his true name is discovered, it may be included in the subsequent proceedings, referring to the fact of his being indicted by the name mentioned in the indictment." No material error was committed by the repetition of the fictitious names. While undoubtedly they might with propriety have been omitted in the administration of the oath to jurors and witnesses after the true name was discovered, and inserted in the indictment and other proceedings, yet as such names all appeared in the indictment and in the evidence, it was not error to repeat them whenever it became necessary to name the defendant, and it cannot be assumed that any legal harm was thereby done to him.

After the jury returned their verdict of guilty, the counsel for the defendant requested that the defendant be remanded until the Tuesday following, which was the twenty-second day of December, that he might then make a motion for arrest of judgment, and for a new trial, and the court granted the request, and ordered that the prisoner should be remanded until that day. The record then states that no further proceedings were had, and no motion was made by either party during the December term of the court; that afterwards, on the twenty-fourth day of December, 1885, the December term of the court was finally adjourned without day; that afterwards, on the seventh of day January, 1886, at the January term of the court, the same judge presiding, the following proceedings were had: The defendant being again led to the bar of the court, the district attorney moved for judgment, and the defendant being asked if he had any cause to say why judgment should not be pronounced against him, his counsel moved for a new trial upon various grounds mentioned, being for errors committed during the progress of the trial. He also moved the judgment should

be arrested, because, among other things, "the verdict was rendered and the jury discharged on the eighteenth day of December, 1885, and during the December term of the court; and afterwards, to-wit, on the twenty-fourth day of December, 1885, the court was duly adjourned until the next term, by which adjournment the December term was finally adjourned without day, no judgment having been rendered, and the defendant not having applied for or consented to any delay in the rendition of judgment beyond the twenty-second day of December, 1885, being the Tuesday following next after the day on which the verdict was rendered, and the court now holding the January term, 1886 has no jurisdiction to render judgment in the action."

The court which pronounced the judgment was the same court which tried the indictment, and in which the verdict was rendered, and it would be a sufficient answer in this cose that no substantial harm was done to the defendant by the delay from the twenty-second day of December to the seventh day of January following. But upon this record it may fairly be said that the defendant, not objecting, waived any delay within the meaning of section 472 of the Code of Criminal Procedure, which provides that the time for pronouncing judgment after a verdict of guilty "must be at least two days after the verdict, if the court intend to remain in session so long, or, if not, as remote a time as can reasonably be allowed; but any delay may be waived by the defendant." Judgment in this case was postponed, at the request of the defendant, until the twenty-second day of December, to enable his counsel to make a motion for arrest of judgment and for a new trial. On that day he did not appear, or request to appear, in court to make his motion, and hence he must be assumed to have been wholly indifferent to the delay, and to have consented thereto. There is therefore no reason for saying that the court lost jurisdiction to pronounce judgment on a subsequent day.

---

Note on " Corroborative Evidence."

---

We have now noticed briefly all the allegations of errors brought to our attention by the counsel for the defendant and believe that none of them are well founded. The judgment should be affirmed.

All concur.

---

## NOTE ON " CORROBORATIVE EVIDENCE."

*Before Code.*—Prior to the Code, the rule in the State permitted the jury to convict a defendant upon the uncorroborated testimony of an accomplice. People *v.* Costello, 1 Denio, 83. But it was the uniform custom of judges to advise the jury that the evidence of the accomplice should be received with great caution, and it rarely happened that a conviction was had upon his unsupported evidence. The rule now embodied in the statute is substantially the rule which before the statute courts were in the habit of stating to the jury for their guidance, although, as has been said, it was not enforced as a rule of law. Id.; People *v.* Dyle, 21 N. Y. 578; Dunn *v.* People, 29 Id. 523; Lindsay *v.* People, 63 Id. 154.

In People *v.* Davis, 21 Wend. 309, it was held that, where the direct charge rests for its proof upon the testimony of accomplices, such proof is sufficient to convict, if corroborated by the evidence of credible witnesses though their testimony has only an indirect tendency to establish the commission of the particular offenses charged; in this case, the testimony of the accomplices fixed upon the prisoner the charge of having in his possession counterfeit bills with the intent to pass, and the proof by the unimpeached witnesses showed that the prisoner was possessed of a press and plates used in making counterfeit impressions of bank bills; and it was held to be sufficient to uphold a conviction. But the confirmation of the accomplices must, however, be of some fact or facts which go to fix the guilt of the accused. Id.

Prior to the enactment of section 399 of the Criminal Code, it was customary for the judges to instruct jurors that they could not convict a defendant of crime upon the evidence of an accomplice unless such evidence was corroborated; and it was the law in this state that a defendant could be convicted upon the uncorroborated evidence of an accomplice, if the jury believed it. People *v.* Everhardt, 104 N. Y. 591. This section has changed this rule of law, and requires that there should be simply corroborative evidence, which tends to connect the defendant with the commission of the crime. Id. In this case, there was such evidence sufficient to show some active agency on the part of the defendant in altering the check, with forging which he was charged, and this to connect him with the commission of the crime, and it was held that this satisfied the law, and the question whether that evidence was sufficient corroboration of the accomplice was

Note on " Corroborative Evidence."

for the determination of the jury. The law is complied with if there is some other evidence which fairly tends to connect the defendant with the commission of the crime so that his conviction will not rest entirely upon the testimony of the accomplice. Id.

*Under Code.* § 399. A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime.

§ 399 of the Code of Criminal Procedure introduces a new rule as to an accomplice's evidence. People *v.* Thompson, 21 W. Dig. 345. A conviction cannot be had upon the testimony of an accomplice alone, unless corroborated by such other evidence as tends to connect defendant with the commission of the crime. Id.; People *v.* Williams, 29 Hun, 523.

Though it is conceded that there was other evidence which, if believed, tended to connect the defendant with the commission of the crime, he is entitled to have this rule, prescribed by the statute, laid down to the jury. It is for the jury to say whether they will believe this other evidence; and, if they come to the conclusion not to believe it, or that it is insufficient to remove all reasonable doubt, in such case, the rule of law given by the statute is pertinent.

To satisfy the requirements of section 399 of the Criminal Code, it is not necessary that the corroborative evidence of itself should be sufficient to show the commission of the crime, or to connect the defendant with it. People *v.* Elliott, 106 N. Y. 288. If it tends to connect the defendant with the crime, it is sufficient. Id. The corroborative testimony need not be wholly inconsistent with the theory of the defendant's innocence. Id. The court must be satisfied that there is some corroborative evidence fairly tending to connect the defendant with the commission of the crime, and then submit it to the jury, and it is for them to determine whether the corroboration is sufficient to satisfy them of the defendant's guilt. Id.

In the case of People *v.* Ryland, 97 N. Y. 126, the defendant, with her husband and another, were indicted for forgery in the third degree, in raising a check. It appeared on the trial that the defendant suggested the idea and went alone to a store where she procured a check for six dollars, upon the representation that she desired to send the money that evening to her sister or mother in Philadelphia, and she could not obtain an order at the post office, as it was closed. She delivered the check to her husband. He, in her presence, erased with an acid the name of the payee and the amount. Subsequently the check was filled in for the sum of $165.50, the money was obtained thereon, and $74 of that sum paid to defendant. All the proof as to what occurred when the plan was suggested, and also after the defendant returned with the check, in reference to the alteration thereof, was the testimony of an accomplice. It was held that there was other testimony tending to connect the defendant with the commission of the crime, sufficient to meet the requirements of § 399 of the Code of Criminal Procedure, which prohibits a conviction on the uncorroborated testimony of an accomplice.

33

Note on "Corroborative Evidence."

The rule of the common law, in regard to the corroboration of the testimony of an accomplice, has been changed by the Code of Criminal Procedure, and it is provided by § 399, that a conviction cannot be had upon the testimony of an accomplice, unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the crime.

*Who an Accomplice.*—In People *v.* Bliven, 47 Hun, 635, which was an indictment for the unlawful procuring of a miscarriage upon the person of a pregnant woman under section 294 of the Penal Code, it was held that the pregnant woman referred to in the indictment was not an accomplice within the meaning of section 399 of said Code.

It was held in People *v.* Vedder, 98 N. Y. 630 that a woman, upon whose body the crime of abortion was committed, cannot, under the provision of § 294 of the penal Code defining that crime, be an accomplice, and, therefore, the provision of § 399 of the Code of Criminal Procedure, prohibiting a conviction upon the testimony of an accomplice unless corroborated, does not apply to her testimony. The rule requiring corroboration is one that, in the exercise of that caution and tenderness which the common law always entertains for the rights of persons accused of crime, should be applied in all cases where the witness is in any way culpably implicated in the commission of a crime.

It was held in the case of People *v.* Dunn, *ante*, that such a person did not stand legally in the situation of an accomplice, for, though she no doubt participated in the moral offense imputed to the defendant, she could not have been indicted for that offense; the law regards her rather as the victim than the perpetrator of the crime. The statute of 1845, under which that case was considered, did not, so far as the question under discussion is concerned, differ in material respects from the provisions of the Penal Code. In both statutes the act of the witness in submitting to the perpetration of the crime is made a distinct and separate offense, and is punishable by a different penalty; and the provision in each statute impliedly excludes her from the penalties prescribed for those who produce a miscarriage by the use of drugs, medicines or instruments. The language of § 294 of the Penal Code, fairly construed, implies that the person, upon whom the operation is performed cannot be one of the persons guilty of the offense described. It is there provided, "That a person, who, with intent to procure the miscarriage of the woman, either prescribes, supplies or administers to a woman," etc., "or uses or causes to be used any instrument or other means" upon her, "is guilty of abortion." The statute plainly contemplates two persons as co-operating in the commission of the crime, the one being the guilty person, against whom the penalties of the statute are directed, and the other, the subject upon whose body the crime is committed. It then proceeds to define the respective crimes committed by the respective persons participating in the act, and pronounces different penalties for the respective offenses. It is very evident that the woman spoken of in the statute is not regarded as one of the persons who could be guilty

of the crime described in § 294 of the Penal Code, and that she could not, therefore, be indicted under that section. People *v.* Vedder, *ante ;* State *v.* Hyer, 10 Vroom. 599; Commonwealth *v.* Wood, 11 Gray, 85; Commonwealth *v.* Boynton, 116 Mass. 343; Watson *v.* State, 9 Texas Ct. of App. 237.

The testimony of the woman on the trial of the one who performs an abortion, is not that of an accomplice, which under § 399 of the Code of Criminal Procedure needs corroboration. People *v.* Meyer, 44 Hun, 624. In this class of cases, since it has been made one offense to use an instrument, or other means to procure an abortion, and another offense on the part of the pregnant woman to submit to such use, corroborative evidence is not required. People *v.* Vedder, *ante.*

In People *v.* Emerson, Supreme Ct. Cham. Dec. 18, 1888, it was held that the purchaser of lottery policies was not an accomplice with the seller, and that his testimony, on the trial of the seller on an indictment for selling lottery policies, did not come within the rule requiring the testimony of an accomplice to be corroborated.

In The People *v.* Noelke, 29 Hun, 461, it was held that one purchasing a lottery ticket for the purpose of showing that the vendor was engaged in a violation of the statute was not an accomplice with the person from whom the tickets were purchased. See also People *v.* Noelke, 94 N. Y. 137, and Commonwealth *v.* Willard, 22 Pick. 476.

In People *v.* Smith, 28 Hun, 626, the defendant was convicted of a violation of the excise law solely upon the evidence of the person to whom the sale was made. It was objected that, under §399 of the Code of Criminal Procedure, the defendant could not be convicted upon the uncorroborated testimony of the witness. But this objection was held untenable by the general term, upon the ground that the excise law made only the person selling, and not the purchaser, guilty of a criminal act; and that the purchaser was not, therefore, an accomplice within the meaning of section 399 of the Code of Criminal Procedure. And the fact that the witness who made the purchase was either an officer of the law, or was acting in an official capacity and engaged in an effort to secure a conviction of a violater of the law, does not affect the question. Under the excise and lottery statutes, the purchaser has not been subjected to any criminal accountability whatsoever; and, by the mere purchase, he cannot be a participant in the performance of the act which the statute has declared to be an offense. People *v.* Smith, *ante.* This act was performed wholly and exclusively by the vendor, for he, unaided by the purchaser, acts alone in making the sale. An accomplice is a person involved either directly or indirectly in the commission of the crime. To render him such, he must in some manner aid or assist, or participate in the criminal act, and by that connection he becomes equally involved in guilt with the other party, by reason of the criminal transaction. Id.; Commonwealth *v.* Willard, *ante ;* Commonwealth *v.* Downing, 4 Gray, 29; Campbell *v.* The Commonwealth,

84 Penn. 187; State *v.* McKean, 36 Iowa, 343; Trustees *v.* O'Malley, 18 Ill. 407; Smith *v.* State, 37 Ala. N. S. 472; People *v.* Farrel, 30 Cal. 316.

A person who was not present at the commission of the crime of burglary and larceny, did not organize or take part in it further than to help the defendants conceal the property after the burglary, and even then knew nothing criminal in its acquisition, was held in People *v.* Ricker, 51 Hun, 643, not to be an accomplice; and, if not an accomplice, corroboration was not necessary.

*Abduction.*—Section 283. No conviction can be had for abduction, compulsory marriage, rape or defilement, upon the testimony of the female abducted, compelled or defiled, unsupported by other evidence.

A conviction under this section of the Penal Code cannot be sustained upon the unsupported evidence of the female abducted. Penal Code, Section 283; People *v.* Plath, 100 N. Y. 590. It is now conceded to be the general rule, that the corroboration should tend to show the material facts necessary to establish the commission of a crime, and the identity of the person committing it. Id.

The policy of the statute would seem to forbid the conviction of the crime of abduction, upon the unsupported evidence of the subject of the crime, and a conviction founded upon the evidence of the abducted female alone as to one of the elements constituting the crime, would be contrary to its implied prohibition. Id. Such evidence must tend to prove each of the facts constituting the crime, for otherwise a person might be convicted of an offense as to one of whose elements there existed no proof except that of the alleged abducted female. Proof must be given, aside from her testimony, as to both the taking and the intent. Id. Direct and positive evidence is not indispensable to furnish corroboration, but proof of circumstances legitimately tending to show the existence of the material facts will be sufficient to authorize a conviction. Id. The establishment of commission of the crime, and the perpetration of it by the accused person, must be aided by one, or the other, form of proof, in support of the testimony of the female, before a conviction can be lawfully had. Id.

Under an indictment for abduction under section 282 of the Penal Code, it was held in People *v.* Brandt, 47 Hun, 638, that the testimony of the abducted female, if corroborated by other evidence as to the facts of the taking, receiving and employing, etc., as to her age, and as to the purpose of prostitution, was sufficient to sustain a conviction. This case was affirmed by the Court of Appeals, without opinion, and is reported in 110 N. Y. 657.

*Seduction.*—In People *v.* Kearney, 110 N. Y. 188, upon the trial of an indictment for seduction, under promise of marriage, the testimony of the prosecutrix was to the effect that the crime had been committed in July, and that the defendant thereafter had frequent intercourse with her until December. The court permitted the prosecution to prove that, in August of the next year, the prosecutrix was delivered of a child. It was held that the evidence did not tend to corroborate the testimony of the female as to

the commission of the crime charged, as it did not tend to show illicit intercourse thirteen months before the birth of the child.

The decision in People *v.* Plath, *ante,* does not make it necessary, on the trial of an indictment for seduction under promise of marriage, to corroborate the prosecutrix upon the questions of the previous chaste character and non-marriage of the female seduced. Supporting evidence on these points never was, and is not now, required. People *v.* Kearney, *ante;* Kenyon *v.* People, 26 Id. 203.

The supporting evidence possible in most cases of this character, is the subsequent admission or declaration of the party making it; or the circumstances which usually accompany the existence of an engagement of marriage, such as exclusive attention to the female on the part of the male, the seeking and keeping her society in preference to that of others of her sex, and all those facts of behavior toward her. Armstrong *v.* People, 70 N. Y. 38.

· So, too, the act of illicit connection, and the immediate persuasions and inducements which led to compliance, it may not be possible to prove by the evidence of third persons directly to the fact. They are to be inferred from the facts; that the man had the opportunities, more or less frequent and continued, of making the advances and the proposition; and that the relations of the parties were such, as that there was likely to be that confidence on the part of the woman in the asseverations of devotion on the part of the man, and that affection towards him personally, which would overcome the reluctance on her part, so long instilled as to have become natural, to surrender her chastity. Id.

Circumstances of this kind vary in weight in different cases, and it is for the jury to determine their strength. But when proof is made of the existence of them, in some degree, it cannot be said that there is no supporting evidence. A court cannot then properly direct a verdict, or discharge the defendant in the indictment, on the ground that no case is made for the consideration of the jury. Id.

In this case, the prisoner was convicted of the crime of seduction under promise of marriage, and it was held that the fact that the prosecutrix in her testimony limited the carnal connection to a single act, and specified the time, did not require that the supporting evidence should be confined to that particular time, and that if it covered a period including the specified time, it was sufficient to meet the requirement of the statute, though there was no corroborate evidence as to the particular act to which she testified.

It was settled that the supporting evidence, under chap. 111 of Laws of 1848, was required as to two of the matters named in the act, and as to them only, the promise of marriage, and the carnal connection. Id. And in such case the supporting evidence need be such only as the character of these matters admits of being furnished. Id.

In Kenyon *v.* People, *ante,* it was claimed by the prisoner's counsel that

no conviction could be had unless the prosecutrix was supported by other evidence, not only as to the promise and illicit intercourse, but also as to the facts of her being unmarried, and her previous chaste character. It was held that the statute does not contemplate that the female shall be supported or corroborated upon every material fact alleged. It is enough if the support extends to those facts which go to prove the offense charged. No corroboration or support is necessary to the points which merely indicate the person to be protected by the statute, viz.: that she was an unmarried female and of previous chaste character. It is only that she should be supported by direct evidence or proof of circumstances, as to the facts constituting the crime. These were the promise and the intercourse.

In Boyces *v.* People, 55 N. Y. 644, evidence was given that she was alone with the prisoner at the time she charged the offense was committed, also as to her condition after it, as to his attentions and familiarities, and as to his solicitude during her sickness immediately following the alleged offense. It was held that the statute did not require direct or positive corroborative evidence as to any of the material facts, but rather such evidence as has been ordinarily required in corroboration of the evidence of an accomplice when called as a witness against his confederates in crime or circumstances usually relied upon as tending to prove the material facts, and which from the nature of the case are susceptible of being proved, to satisfy the jury that the principal witness is worthy of credit; that, from the peculiar nature of the offense circumstantial evidence only can, save in rare instances, be adduced, other than from the parties concerned, and to require more would be to render the statute mere *brutem fulmen.*

In People *v.* Cullen, 53 Hun, 629, the Court intimated that the rule laid down in People *v.* Plath, *ante;* 3 N. E. R. 790, has been very much modified by subsequent adjudication in kindred cases, viz.: People *v.* Elliott, 106 N. Y. 288, 12 N. E. R. 602; People *v.* Everhardt, 104 N. Y. 591, 11 N. E. R., 62, and that the true rule is that if there is some evidence fairly tending to support the complaint as to some material part of the crime charged, so that a conviction will not rest entirely upon the testimony of the complainant, it is the duty of the court to submit the question to the jury. In People *v.* Cullen, *ante,* there was testimony in addition to that of the prosecutrix, a child seven and one half years old, that the day after the alleged assault an examination of the prosecutrix, person showed that an assault may have been committed, and it was held that it was proper to submit the question of defendant's guilt or innocence to the jury.

*Confession.*—§ 395. A confession of a defendant whether in the course of judicial proceedings or to a private person, can be given in evidence against him unless made under the influence or fear produced by threats or made under a stipulation of the district attorney, that he shall not be prosecuted therefor; but it is not sufficient to warrant his conviction, without additional proof that the crime charged has been committed.

A declaration by one accused of crime, denying any criminal act and

explaining suspicious circumstances for his own advantage, is not a confession, within section 395, excluding confessions produced by threats, etc. People *v.* McCallam, 3 N. Y. Crim. R., 189.

The jury cannot convict upon the confession of the defendant alone. But it is not the law that there must be evidence enough to satisfy of guilt outside of the confession. The jury has the right to resort to the confession to aid the other evidence in the case and upon the whole determine as to the guilt. People *v.* Mondon, 38 Hun, 188.

By section 395 of the Code of Criminal Procedure, it is declared that the confession of the defendant is not sufficient to warrant a conviction, without additional proof that the crime charged has been committed. People *v.* Jaehne, 103 N. Y. 182. It was held in this case that when in addition to a confession, there is proof of circumstances which, although they may have an innocent construction, are never the less calculated to suggest the commission of a crime, and for the explanation of which the confession furnishes the key, the case cannot be taken from the jury for a non-compliance with the statute.

The words of section 395 of the Criminal Code, viz.: "additional proof that the crime charged has been committed," seem to imply that the confession is to be treated as evidence of the *corpus delicti,* that is, not only of the subjective criminal act, but also the criminal agency of the defendant; in other words, as competent proof of the body of the crime, though insufficient without corroboration to warrant a conviction. People *v.* Jaehne, *ante.*

On an appeal from a judgment of conviction on an indictment for grand larceny in the second degree, it was held, in People *v.* Carr, 3 N. Y. Crim. R. 578, that the proof required to convict an accused person, in addition to his voluntary confession, under section 395 of the Criminal Code, may be either direct or circumstantial.

Full proof of the body of the crime, the *corpus delicti,* independently of the confession, was held in People *v.* Badgley, 16 Wend. 53, not to be required by any of the cases; and in many of them slight corroborating facts were held sufficient. This case was an indictment for forging a promissory note, and it was held that the destruction of the note as soon as it came to the hands of the prisoner, the purchase of the note by his friends at his earnest solicitation to prevent a threatened criminal prosecution, and his failure to show a genuine maker, were sufficient corroborating circumstances to sustain a conviction.

Section 395 of the Criminal Code only repeats the pre-existing rule that there must be proof *aliunde* of the *corpus delicti,* although such proof need not be conclusive. People *v.* Deacons, 109 N. Y. 374; People *v.* Badgley, *ante.* The meaning of the Code is that there must be some other evidence of the *corpus delicti* besides the confession; the purpose is to require some proof of the death, and the violence which caused it, outside of and beyond the mere confession of the prisoner. Id. In this case, it was held that

proof of the finding of the body of the deceased with unmistakable marks thereon of a murder committed, was sufficient to sustain a conviction based upon a confession of murder. In a case where the body is not found, and there is no proof of violence or of death except by the confession of the accused, such confession will not suffice, but there must be some other evidence of the existence of the criminal fact to which the confession relates.

In People *v.* McGloin, 91 N. Y. 241, the trial of an indictment for murder it appeared that the defendant who lived over his bar-room, was disturbed in the night time by a noise in the room below, and, while going down the stairs, was shot by some person standing below, who was engaged in the commission of a burglary, that on the prior evening the prisoner had redeemed a pistol which was in pawn, took it away and pawned it again the next morning. The pistol was found through admission contained in the prisoner's confession and he acknowledged that it was the pistol with which the deceased was shot. He also admitted that he had stated, the morning after the murder, that " a man ain't a tough until he knocks his man out." It was held that there was sufficient evidence aside from the confession to meet the requirements of section 385 of the Criminal Code, and to warrant a conviction.

In People *v.* Hennessey, 15 Wend. 147, the prisoner was tried and convicted upon a charge of embezzlement of money collected while in the employment of another, and the conviction was had upon his own confession, without any corroborating facts or circumstances. None of the persons from whom the money was collected were called. It was held that the prisoner had been wrongfully convicted upon proof of his confession alone, though it was apparent that there was other evidence, which was not produced, to prove that an offense had been committed.

Under section 395, of Criminal Code, a conviction of the assignor of a claim, of larceny in drawing and spending the money after he had assigned the claim, upon testimony to his confession of having done so, is not sufficiently corroborated by the written assignment of his claim. People *v.* Kelly, 37 Hun, 160.

*Admissibility.*—The admissibility of examinations before a coroner, in evidence upon the trial of an offender, has been passed upon in many English cases but the whole subject has been so thoroughly discussed in three cases in the court of appeals that it is not necessary to refer particularly to the English authorities.

In Hendrickson *v.* People, 10 N. Y. 13, the wife of the defendant died suddenly in the morning, and in the evening of the same day the coroner's inquest was held. Upon the inquest, defendant was called and sworn as a witness. It did not appear at that time that any crime had been committed, or that the defendant had been charged with any crime, or even suspected, except so far as the nature of some of the questions asked of him might indicate such a suspicion. On his subsequent trial on an indictment for the murder of his wife, the statements made by him at the coroner's

inquest were held admissible against him, on the ground that he was not examined as a party charged with the crime; that it had not even appeared that a crime had been committed, and that he had simply testified as a witness on the inquiry as to the cause of the death.

In People *v.* McMahon, 15 N. Y. 384, the defendant was arrested by a constable, without warrant, on a charge of having murdered his wife. The constable took him before the coroner, who was holding an inquest on the body. The defendant was sworn and examined as a witness upon the inquest. It was held that the evidence thus given was not admissible on the prisoner's trial for the murder, and his conviction was reversed upon that ground. All the judges who heard the case concurred in the judgment.

In Teachout *v.* People, 41 N. Y. 7, the defendant appeared at the coroner's inquest, in pursuance of a subpœna to testify, and voluntarily attended. He was not under arrest. He was informed however, that it was charged that his wife had been poisoned and that he would be arrested for the crime. The coroner told him, before he was sworn, that there were rumors that his wife came to her death by foul means, and that some of those rumors implicated him, and that he was not obliged to testify unless he chose. He said he had no objection to telling all he knew. The court of appeals held that the statements made were voluntary in every legal sense, and that a mere consciousness of being suspected of a crime did not so disqualify him that his testimony, in other respects freely and voluntarily given, before the coroner, could not be used against him on his trial on a charge, subsequently made, of such crime. On this ground the evidence was held properly admitted. The court referred with approval to the McMahon case, and limited the rule of exclusion to cases within its bounds. See People *v.* Mondon, 103 N. Y. 211.

In the case last cited, the defendant, after the finding of the body of deceased, was arrested, without warrant, as the suspected murderer. While he was thus in custody, he was called as a witness and examined at the coroner's inquest, by the district attorney and the coroner. He was ignorant, unfamiliar with the English language, unattended by counsel and uninformed of his rights, or that he was not bound to answer questions tending to criminate himself. It was held that, when the prisoner was called upon to make a statement on oath before the coroner, he stood in the attitude of an accused person, and was required to answer for himself as a party, and not as a mere witness to aid the coroner in investigating the cause of the death of the deceased. The cause of death was evident, and it was evident that a crime had been committed. From that time the proceedings assumed the form of a criminal investigation. Hendrickson *v.* People, *ante.* By § 777 of the Code of Criminal Procedure, it became the duty of the coroner's jury, if the death was occasioned by criminal means, to find who was guilty thereof, and on such findings the coroner was impowered to issue his warrant for the arrest of the guilty party, if not already in custody. The prisoner thereupon occupied the position of a person accused of crime, and his

situation was similar to that of such a person before an examining magistrate; and though the tribunal was different, yet, upon principle, his rights: were the same in both cases. Id.; Teachout *v.* People, *ante ;* McMahon *v.* People, *ante.*

There has been no case overruling the McMahon case, nor any decision, either in this country or in England, at variance with it. There are many which sustain it, and even go farther in the direction of excluding examinations under oath, before a magistrate, of persons afterwards put upon trial on criminal charges.

The case of People *v.* McGloin, *ante,* was a clear case of a voluntary confession. While under arrest, the defendant told the inspector. of police, who had him in charge, that he would make a statement. The inspector then sent for the coroner who came to police head-quarters and took down in writing the confession dictated by the defendant, without asking any questions or acting in any official capacity, but as a mere amanuensis to take down the confession and prove the contents. And it was held that. the confession, whether sworn or unsworn, was in no respect compulsory, but was voluntarily offered by the defendant; and that the decision was in no respect in conflict with the McMahon case. ·

§ 395 of the Code of Criminal Procedure provides that a confession of defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats, or unless made upon a stipulation of a district attorney that he shall not be prosecuted therefor. This rule is founded upon the common law rule on the subject of confessions, but is much more definite and stringent. The rule of the common law was that a confession, whether made under an official examination or in discourse with private persons, which is obtained from a defendant, either by the flattery of hope or by the impression of fear, however slightly the emotions may be implanted, is not admissible in evidence. By the section of the Criminal Code above quoted, the fear which is required to exclude the confession must be a fear produced by threats, and the hope must be based upon the stipulation of the district attorney promising immunity from prosecution for the crime confessed. But this provision was not intended to apply to any but voluntary confessions, nor to change the statutory rules relating to the examination of prisoners charged with crime. The criminal Code retains the provision of the Revised Statutes applicable to such examinations, which provisions are framed with reference to the consituttional provision that no person shall, in any criminal case, be compelled to be a witness against himself. People *v.* Mondon, *ante.*

To take a prisoner before a magistrate, swear him, subject him to a minute interrogation as to the circumstances relied upon as evidence of his guilt, and then use such an examination on his trial, would be a departure from our system of criminal jurisprudence, which should not be tolerated; and, whether the investigation was conducted before a committing magistrate, or before a coroner's jury, can make no substantial difference, provided that.

Note on " Corroborative Evidence."

it appears that a homicide has been committed, the prisoner brought before the inquest is an accused person, and the object of the inquisition was to ascertain his guilt.

There is nothing indefinite in the doctrine of the McMahon case, as defined and limited in the Teahout case; and an adherence to it will not in any way embarrass the administration of criminal justice in this state, while on the other hand a departure from it will be subversive of some of the fundamental principles of our criminal jurisprudence. Nor is there anything in the exclusion of such evidence inconsistent with § 395 of the Criminal Code. The object of this section is to declare what confessions shall be deemed voluntary and therefore admissible, whether made out of court to private persons, or in court, or in the course of a judicial proceeding between any parties.

When a coroner's inquest is held before it has been ascertained that a crime has been committed, or before any person has been arrested charged with the crime, and a witness is called and sworn before the coroner's jury, the testimony of that witness, should he afterwards be charged with the crime, may be used against him on his trial, and the mere fact that at the time of his examination he was aware that a crime was suspected, and that he was suspected of being the criminal, will not prevent his being regarded as a mere witness, whose testimony may be afterwards given in evidence against himself. In such case, if he desires to protect himself, he must claim his privilege at the inquest. But if, at the time of his examination, it appears that a crime has been committed, and that he is in custody as the supposed criminal, he is not regarded merely as a witness, but as a party accused, called before a tribunal vested with power to investigate preliminarily the question of his guilt, and he is to be treated in the same manner as though brought before a committing magistrate; and an examination, not taken in conformity with the statute, cannot be used against him on his trial for the offense. People v. Mondon, ante.

In the People v. McCallam, 103 N. Y. 587, it was held that the statement of an officer, while searching a house for stolen property that the party suspected of the theft might as well own up, as he had enough to convict her, and that she might consider herself under arrest, is not sufficient to render incompetent. upon her trial for the offense, evidence of declarations thereafter made by her, even though such declarations are regarded as a confession. The statements of the officer in such case cannot be regarded as a threat, which induced the declarations, The latter are, therefore, provable under § 395 of the Code of Criminal Procedure.

In People v. Wentz, 37 N. Y. 304, the officer told the accused that he was "in a bad fix and had got caught at last." The defendant then confessed his guilt; and it was held that there was no inducement, promise, threat or menace used to obtain the confession, or influence its being made, and that the evidence was properly admitted.

In People v. Druse, 103 N. Y. 655, it was held that a confession of the defendant, not made under the influence of fear produced by threats, nor

upon any promise of immunity from prosecution, was admissible within the general rule prescribed by § 395 of the Code of Criminal Procedure. It is immaterial that, when the confession was made, the defendant was under arrest. Under such circumstances, the confession was voluntary and not within the rule applied in the case of Mondon, excluding confessions made by an accused prisoner, as a witness who has not been informed of his legal rights.

It was held in People *v.* Kurtz, 42 Hun, 335, that the fact that the defendant is under arrest and that his confession is made to an officer, are circumstances which do not render it incompetent. See People *v.* Wentz, *ante ;* Cox *v.* People, 80 Id. 500.

A confession made under promise that the prisoner might be used as a state witness must be rejected. And it was rejected where the proof was that the district attorney may have said to him that he might be used as a state witness. State *v.* Johnson, 30 La. Ann. part 2, 881. So, a confession on a promise that, if the prisoner will turn state's evidence, he shall not be prosecuted, was rejected. Womack *v.* State, 16 Tex. App. 178; Rex *v.* Rudd, 1 Leach, 115; People *v.* Whipple, 9 Cow. 707. So confession made, where a person in authority induced the prisoner to believe that he would get off better, is inadmissible. People *v.* Wolcott, 51 Mich. 612.

In Commonwealth *v.* Taylor, 5 Cush. 605, the prisoner was in custody of three constables. Two of them said to him that they could make him no promises, but if he would make a disclosure, they would use their influence to have it go in his favor. The prisoner made no statement, but the next day, without any further promises, he made a confession to the third constable. The admission of the confession in evidence on his trial was held to be error.

The prosecutor is bound to satisfy the court that the confession is not obtained by improper means. Thus, where the court below held that the prisoner must show that the threats had been made in order to exclude the confession, the judgment was reversed, and the appellate court held that affirmative proof must be given that the confession was voluntary. State *v.* Garvey, 28 La. Ann. 925.

The people cannot take the position that their officer, or one employed by him, used language so deceptive that the defendant believed he had a promise, while, after all, no promise was made him. People *v.* Kurtz, *ante.* It certainly cannot be permitted that the district attorney may afterwards decide not to use the prisoner as a state witness, but to convict him on his confession thus obtained.

The confession of a defendant is declared to be admissible unless made upon a stipulation of the district attorney that he shall not be prosecuted therefor. As the crime is not mentioned in the section, this grammatically means a stipulation that the defendant shall not be prosecuted for the confession. But the section evidently refers to the practise of permitting one charged with crime to become what was formerly called " an approver,"

and now a state's witness. The section means that if, by assurance from the district attorney that the prisoner shall not be prosecuted for his crime, the latter has been induced to make a confession thereof, such confession shall not be used as evidence against him. In examining this question, the principle of morals must be remembered, that a promise must be taken against the promissor in the sense in which he believed, or should have believed, it was understood by the promisee. The district attorney, or any one who may justly be believed to act for him, cannot be permitted to use language which he must have thought would be understood by the prisoner as an assurance of freedom from prosecution, and thereby obtain a confession which the people can use against him, for the reason that, before the confession was actually made, the district attorney said that he could make no promises.

A confession is not conclusive, even though it is perfectly voluntary. The jury may still consider all the circumstances upon the question whether it is true or false. There may be facts proven which show that a voluntary confession is false, and the jury have a right to consider these facts on the question of the falsity of the confession. On the other hand, a confession obtained contrary to § 395 of the Criminal Code, even though it is true, must be rejected. People *v.* Kurtz, *ante.*

Though the court is justified in admitting a confession, yet, where the evidence is conflicting as to the manner in which it was obtained, the jury may reject it if they shall find that it was obtained contrary to said section. In Commonwealth *v.* Piper, 120 Mass. 185, it was said that, when a confession is offered in evidence in a criminal case, and the defendant objects on the ground that he was induced to make it by threats or promises, it necessarily devolves upon the court to determine the preliminary question whether such inducements are shown; but, if there is any conflict of testimony, or room for doubt, the court will submit this question to the jury with instructions that, if they are satisfied that there were such inducements, they shall disregard and reject the confession. See also Commonwealth *v.* Cuffee, 106 Mass. 285; Commonwealth *v.* Cullen, 111 Id. 435; Same *v.* Smith, 119 Id. 305; Same *v.* Culver, 126 Id. 464; People *v.* Barker, 27 N. W. Rep. 539; Stallings *v.* Georgia, 47 Georgia, 572; Holsenbake *v.* Georgia, 45 Id. 43; Earp *v.* Same, 55 Id. 136. But see State *v.* Vann, 82 N, C. 631, for an exception to this principle. This doctrine seems to be sound. Whether threats or promises induce the confession may sometimes be a question of fact depending, perhaps, on conflicting evidence. In such case, the court must decide preliminarily; but it is reasonable that the question, of fact, if there is any doubt, should be submitted to the jury. This question was carefully examined in People *v.* Kurtz, *ante*, but it was not deemed necessary by the court to decide this point.

§ 395 of the Criminal Code has provided that the confession of a defendant, whether in the course of judicial proceedings, or to a private person, can be given in evidence against him, unless made under the influence of

Note on "Corroborative Evidence."

fear produced by threats, or upon the stipulation of the district attorney that he shall not be prosecuted therefor. People *v.* Chapleau. 121 N. Y. 266.

Where a confession is made at the defendant's own election and request, and without the operation of the influences of fear, produced by threats, or of hope, under a stipulation that he would not be prosecuted, it was admissible even before the enactment of the Code provision; in such case, it is voluntary, for the reason that it is made at the prisoner's own suggestion.

A voluntary confession was defined in People *v.* McMahon, *ante*, as one proceeding from the spontaneous suggestion of the party's own mind, free from the influence of any extraneous cause. § 395 of the Criminal Code was held in People *v.* Mondon, *ante*, to apply only to voluntary confessions, and not to change the statutory rule relating to the examination of prisoners charged with crime.

Both before and since the enactment of the Code provisions, the test of admissibility of the statements of a party, accused of the commission of a crime, whether made or not made, in the courts of judicial proceeding, is whether they are voluntary; and this can be determined by their nature and the circumstances under which made. People *v.* Chapleau, *ante*. If in all respects, and however viewed, they could only have been the voluntary and uninfluenced statements of the individual, no principle of law warrants their exclusion, and the Code expressly authorizes their being given in evidence upon the trial. Id. It is no ground for the exclusion of admissions that they were made while the party was under arrest, if shown to have been made voluntarily and free from influences of promises or threats. Id. Balbo *v.* People, 80 N. Y. 484.

In People *v.* Sharp, 107 N. Y. 427, it was held that, where a person attends before a legislative committee in obedience to its subpœna and is sworn and examined as a witness, he cannot be deemed a willing or consenting witness, and he does not waive the privilege given by § 79 of the Penal Code by not asserting it before the committee.